This Decision is a
Precedent of the TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**

MBA

Mailed: November 16, 2011

Opposition No. 91195552
Cancellation No. 92053001


Frito-Lay North America, Inc.

v.

Princeton Vanguard, LLC


**Michael B. Adlin, Interlocutory Attorney:**

This case now comes up for consideration of applicant's motion, filed June 7, 2011, to compel opposer to supplement its responses to applicant's document requests, primarily by producing electronically-stored information and documents ("ESI"). The motion is fully briefed.[1] On September 21 and 27, 2011, the Board held teleconferences with the parties to hear additional argument on the motion, at which Susan J. Hightower appeared on opposer/petitioner Frito-Lay North America, Inc.'s ("opposer") behalf and David H. Bernstein appeared on applicant/respondent Princeton Vanguard, LLC's ("applicant") behalf.

---

[1] In addition, on July 11, 2011, the parties filed a stipulation to extend the deadline for expert disclosures, which is approved. Trademark Rule 2.127(a). Both parties filed and served expert disclosures on September 16, 2011.

Opposition No. 91195552 and Cancellation No. 92053001

Background and Undisputed Facts

Applicant owns a Supplemental Register registration for the mark PRETZEL CRISPS, in standard characters and with PRETZEL disclaimed, for "Pretzel crackers,"[2] and seeks a Principal Register registration of the same mark for the same goods, under Section 2(f).[3] In both its petition to cancel and its notice of opposition, opposer alleges that: (1) "Opposer and others in the snack food industry have a present and prospective right to use the term 'pretzel crisps' generically and/or descriptively in their business;" and (2) applicant's involved mark is generic. In its notice of opposition, opposer pleads as an additional ground that applicant's mark is "merely descriptive" and has not acquired distinctiveness. Applicant denies the salient allegations in opposer's pleadings.

During their discovery conference in July 2009, the parties discussed ESI discovery, and agreed on the format in which ESI would be produced (.pdf format). However, the parties did not otherwise reach agreement with respect to the discovery or production of ESI.[4] For example, the

---

[2]    Supplemental Registration No. 2980303, involved in Cancellation No. 92053001, issued July 26, 2005 from an application filed April 21, 2004.
[3]    Application Serial No. 76700802, involved in Opposition No. 91195552, filed December 11, 2009, alleging first use anywhere and in commerce on October 6, 2004.
[4]    The parties conducted the discovery conference in connection with Opposition No. 91190246, an earlier-filed, related case between the parties which was consolidated with these proceedings prior to its dismissal. Applicant's former counsel represented

2

parties did not agree on a protocol for identifying and segregating potentially responsive ESI, did not agree on who should review the ESI to determine whether the production of particular documents or information would be appropriate and did not agree on methods of searching the ESI, such as the use of "keywords," to identify documents and information responsive to each other's discovery requests. Suffice it to say, the parties had entirely different views concerning ESI discovery.

In any event, on April 1, 2010, the parties exchanged initial sets of written discovery requests, and both parties requested the production of ESI. Specifically, in the "Definitions and Instructions" accompanying its discovery requests, applicant stated that "[c]omputer files should be provided in electronic form on CD-ROMs in the first instance rather than printouts on paper," and opposer's "Definitions and Instructions" indicate that "[t]hese requests require [applicant] to produce all documents and electronically stored information in [applicant's] 'possession, custody, or control.'" Declaration of Ryan Scott Mellon, one of applicant's attorneys ("Mellon Dec.") Exs. A and C.

Despite the parties' failure to reach agreement on ESI discovery and production (other than the format for any ESI

applicant at the discovery conference, following which applicant's current counsel entered an appearance.

3

actually produced), during the Spring and Summer of 2010, applicant commenced producing documents responsive to opposer's discovery requests, including ESI, on a "rolling" basis. Mellon Dec. ¶¶ 6, 8. Applicant claims that it initially identified "more than 1,650,000 electronic files" of potential relevance, that its counsel "manually reviewed" over 85,000 of these electronic files and that in 2010 alone, applicant incurred "approximately $200,000" in fees associated with electronic discovery. Declaration of Rebecca Cross, one of applicant's attorneys ("Cross Dec."), ¶¶ 2-7. Ultimately, applicant produced over 40,000 electronic documents in 2010. Applicant's e-discovery efforts continue, and applicant anticipates producing "tens of thousands of additional documents in upcoming months." The "combined fees" for applicant's "document collection and production efforts in 2011 are anticipated to be over $100,000," in addition to the "approximately $200,000" already incurred. Id. ¶¶ 8-12; Applicant's Motion p. 11.

Opposer also began producing documents during the Spring and Summer of 2010, but opposer's document production was and remains much less robust than applicant's. In fact, according to applicant, opposer's "production contained no emails, and no internal non-public documents," other than "a summary spreadsheet of sales data and an internally-generated list of trademarks."

4

Before applicant filed its motion to compel, the parties adequately "met and conferred" through multiple discussions and correspondence, as required by Trademark Rule 2.120(e)(1), in an attempt to resolve their discovery dispute. During the parties' negotiations, applicant "emphasized the need for additional discovery material," including especially "electronic files," claiming that opposer's ESI discovery efforts were insufficient, in that opposer did not conduct "attorney-managed electronic data retrieval and search." Mellon Dec. ¶ 9 and Ex. H.

Opposer argued, however, that while it conducted a "reasonable investigation to locate, gather and produce documents reasonably responsive" to applicant's discovery requests, including by identifying document custodians and asking them to search their own files and computers, attorney-supervised searches for ESI "on the computers of employees who received [opposer's] document retention notice" would cost opposer an additional $70,000-$100,000, "an expense that would far outweigh the benefit of any information in determining the matters at issue in this proceeding." Id. Ex. E. Opposer specifically declined to "take forensic images" of its employees' computers. Opposer conceded, however, that "industry usage and meaning" of the term "pretzel crisps" is "relevant" to whether applicant's mark is generic or merely descriptive. Id. Ex. G.

5

On February 9, 2011, the Board denied opposer's motion for summary judgment that applicant's involved mark is generic.

The Parties' Contentions

Applicant argues that opposer's "failure to conduct an attorney-supervised ESI retrieval, search (using appropriate keywords) and review has substantially prejudiced [applicant's] ability to defend" this proceeding. Applicant claims that "[n]o cost, burden or other reason allows [opposer] to rely on custodians to search their own files where the results of that policy are clearly insufficient," especially because opposer is a "snack food behemoth," while applicant is a "much smaller competitor." More specifically, applicant argues that opposer "cannot now decline to carry out the kind of attorney-supervised ESI collection and review that [applicant] has undertaken," and in connection with which applicant incurred significant costs, much greater than the $70,000-$100,000 which opposer would deem excessive. Finally, applicant specifically claims that it is entitled to discovery regarding how opposer's "businesspeople assess the pretzel cracker market (in which [opposer] was a player),[5] their consideration of

---

[5]    There appears to be no dispute that opposer previously offered a "pretzel cracker" product under the mark PRETZEL WAVES which competed with applicant's PRETZEL CRISPS product. Opposer no longer offers PRETZEL WAVES pretzel crackers.

the PRETZEL CRISPS mark and products, and the names and terms they use in discussing these subjects."

Opposer argues, however, that applicant is engaged in an "ongoing 'document dump,' already totaling 137,220 pages." Opposer faults applicant for not working with opposer to avoid an "excessive production" and questions why applicant did not investigate how to "control costs by identifying Applicant's most relevant documents for production." Opposer also points out that "in recent years" applicant or its affiliate Snack Factory, Inc. have been involved in federal court litigation, apparently related to the PRETZEL CRISPS mark or product, and suggests that applicant may have engaged in ESI discovery, and incurred the associated costs, in connection with the federal litigation, prior to commencing closely-related ESI discovery in this case.

As for its own discovery efforts, opposer claims to have "identified nineteen of its employees deemed most likely to have information relevant to this proceeding … and instructed them to search their records, including electronically stored information, using categories keyed to Applicant's requests." Opposer asserts, however, that the information which could be obtained through "forensic imaging" of the custodians' (i.e. employees') computers is "not reasonably accessible," and that the cost of obtaining

it "far outweighs any need for the information," given that opposer's claims pertain solely to applicant's mark, and that opposer "has not used or considered using" the term pretzel crisps.[6] Opposer also argues that much of the information applicant seeks relates not to whether applicant's mark is descriptive or generic, but instead to "competitive business issues between the parties," who are direct competitors, and that applicant's discovery requests "constitute a fishing expedition" for this irrelevant information. More specifically, opposer claims that its production is sufficient under the circumstances of this case, and that it has only declined to produce "trade secret business information which has no bearing on the genericness of 'pretzel crisps' **as used by Applicant**" (emphasis in original).[7]

Decision

Before addressing the adequacy of opposer's ESI discovery efforts, and the specific document requests at issue, it should be pointed out that while the federal courts routinely wrestle with e-discovery disputes, and have

---

[6] Opposer alleges in its notice of opposition that it has a "present and prospective right to use" the term "pretzel crisps," but alleges in opposition to applicant's motion to compel that it "has not considered" using the term. Applicant's motion to compel does not require an assessment of whether opposer has, or has adequately pleaded, standing.

[7] The Board's standard protective order governs this proceeding by operation of Trademark Rule 2.116(g).

Opposition No. 91195552 and Cancellation No. 92053001

done so for many years, e-discovery disputes have been relatively rare in Board proceedings. This is most likely due, in large part, to the Board's limited jurisdiction, under which the Board "is empowered to determine only the right to register." TBMP § 102.01 (3d ed. 2011)(emphasis supplied). In fact, as opposer points out, the scope of discovery in Board proceedings is generally narrower than in court proceedings, especially court proceedings involving allegations of infringement, and/or in which both parties are, unlike here, making extensive use of their marks. In short, it is not surprising (nor is it improper) that opposer generally treats discovery in Board proceedings differently than discovery in other types of trademark litigation,[8] and it is well-settled that opposer "need not provide discovery of [ESI] from sources that [it] identifies as not reasonably accessible because of undue burden or cost." TBMP § 402.02 (3d ed. 2011)(quoting Fed. R. Civ. P. 26(b)(2)(B)).

On the other hand, ESI must be produced in Board proceedings where appropriate, notwithstanding the Board's limited jurisdiction and the traditional, i.e. narrow, view

---

[8] For example, opposer claimed during the teleconferences that it does not generally impose a "litigation hold" after a Board proceeding is commenced, but generally does so upon the commencement of a federal court trademark action. Declaration of Lisa H. Barouh, Senior Manager in Opposer's Compliance Department, ¶ 4. Opposer eventually imposed a litigation hold in this case.

9

of discovery in Board proceedings. Fed. R. Civ. P. 26(f)(3)(C), 26(b)(2)(B), 34(b)(1)(C) and 34(b)(2)(D); TBMP §§ 402.02, 406.03 and 406.04(b) (3d ed. 2011). Furthermore, as applicant points out, discovery inevitably imposes burdens and costs, and opposer, which chose to bring this case, "has a duty" to satisfy the legitimate "discovery needs of its adversary." TBMP § 408.01 (3d ed. 2011). Moreover, this appears to be a significant case for both parties. Indeed, the parties are direct competitors, and applicant claims, and opposer does not dispute, that PRETZEL CRISPS is by far applicant's most important and successful product. In addition, both parties have retained expert witnesses, at what is likely great expense, a relative rarity in Board proceedings.

Were Opposer's ESI Production Efforts Adequate as a General Matter?

Neither the Federal Rules nor the Trademark Rules prescribe how extensive ESI discovery should be. Rather, "electronic discovery should be a party-driven process." Aguilar v. Immigration and Customs Enforcement, 255 F.R.D. 350, 358 (S.D.N.Y. 2008) (citing Fed. R. Civ. P. 26(f)(3)(C)); Trademark Rule 2.120(a)(1). See also, The Sedona Principles for Electronic Document Production (Second Edition) Principle No. 3 (available at http://www.thesedonaconference.org/content/miscFiles/TSC_PRINCP_2 nd_ed_607.pdf) ("Parties should confer early in discovery

regarding the preservation and production of electronically stored information when these matters are at issue in the litigation and seek to agree on the scope of each party's rights and responsibilities.").[9]  As stated in the 2006 Advisory Committee Note to Fed. R. Civ. P. 26(f), "discussion [of ESI discovery] at the outset may avoid later difficulties or ease their resolution."

Here, however, while the parties discussed ESI discovery during their discovery conference and thereafter, they reached agreement only on the form of production prior to responding to each other's discovery requests.  Having failed to reach agreement with opposer on many of the most crucial ESI-related issues in advance of the parties' productions, applicant cannot fairly insist now, after the fact, that opposer must start its ESI search and production over, this time engaging in a process similar to applicant's, especially where opposer characterizes applicant's efforts as excessive rather than merely extensive.  And the mere fact that applicant chose on its own to engage in broad, expensive ESI collection, review and production similar to or repetitive of discovery it conducts in federal court actions is simply not a basis upon which to

---

[9]     Federal courts have referred to the Sedona Conference as "the leading authorit[y] on electronic document retrieval and production."  See e.g., Ford Motor Co. v. Edgewood Properties, Inc., 257 F.R.D. 418, 424 (D.N.J. 2009).

compel opposer to do the same in this Board proceeding.  Nor does opposer's failure "to conduct an attorney-supervised ESI retrieval, search (using appropriate keywords) and review" in the manner applicant proposes mean that opposer's ESI discovery efforts were necessarily inadequate under the circumstances of this case.

Indeed, in the federal courts (where discovery is generally expected to be more extensive than in Board proceedings), there is an increasing focus on the question of proportionality, and on whether the type of extensive ESI discovery applicant advocates here is always justified. See, Sedona Principles Comment 2.b ("Electronic discovery burdens should be proportional to the amount in controversy and the nature of the case.  Otherwise, transaction costs due to electronic discovery will overwhelm the ability to resolve disputes fairly in litigation.").

For example, our primary reviewing court recently issued "An E-Discovery Model Order," to address, among other things, "the disproportionate cost of e-discovery" in patent cases, in which discovery is often broader than in Board proceedings.  See An E-Discovery Model Order, p. 2, at http://pdfserver.amlaw.com/nlj/The%20State%20of%20Patent%20Litigation%20w%20Ediscovery%20Model%20Order.pdf.  The preface to the Model Order explains its purpose:

> Excessive e-discovery, including
> disproportionate, overbroad email

> production requests, carry staggering
> time and production costs that have a
> debilitating effect on litigation.
> Routine requests seeking all categories
> of Electronically Stored Information
> often result in mass productions of
> marginally relevant and cumulative
> documents.  Generally, the production
> burden of these expansive requests
> outweighs the minimal benefits of such
> broad disclosure.

Id. at p. 2.

In issuing the Model Order, the Federal Circuit specifically questioned what applicant advocates here: "the practice of gathering huge amounts of information at the front of a case and running broad key searches as the issues emerge."  Id. at p. 3.  Based on the Federal Circuit's concerns, the Model Order itself "presumptively limits the number of custodians and search terms for all email production requests," id., and provides that "General ESI production requests … shall not include email or other forms of electronic correspondence ….  Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business."  Model Order ¶¶ 6-7.

Furthermore, it is well-settled that the producing party is in "the best position to determine the method by which [it] will collect documents," at least "absent an agreement or timely objection."  Ford Motor Co., 257 F.R.D. at 427; Sedona Principle No. 6 ("Responding parties are best

situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own [ESI].").  And a mere "belief that documents must exist simply is not enough to grant a motion to compel that would require [the party] to go back to square one and begin its document collection efforts anew."  Ford Motor Co., 257 F.R.D. at 428; see also Covad Communications Co. v. Revonet, Inc., 258 F.R.D. 5, 13-14 (D.D.C. 2009).  Here, other than with respect to certain specific document requests addressed below, applicant has not supported its allegation that responsive "documents must exist" which opposer failed to produce.

In view of our limited jurisdiction, the narrowness of the issues to be decided by the Board, and the concerns expressed by the Federal Circuit, the burden and expense of e-discovery will weigh heavily against requiring production in most cases.  Parties are advised to be precise in their requests and to have as their first consideration how to significantly limit the expense of such production.  Absent such a showing, the likelihood of success of any motion to compel will be in question.

For all of these reasons, applicant's motion is **DENIED** to the extent that applicant requests that opposer be required to start its document production over, using the same or similar protocols to those applicant employed.

Applicant has simply failed to establish that opposer's method of searching and producing documents was insufficient as a general matter, given the parties' failure to agree on an ESI discovery protocol in advance, the nature of applicant's discovery requests and the issues in this proceeding.

Did Opposer Adequately Respond to the Specific Document Requests at Issue?

As opposer stresses, this case concerns only whether applicant's mark is generic or merely descriptive and without secondary meaning. While opposer may very well possess certain e-mails and "internal non-public documents" which are at least somewhat relevant to these issues, the question is whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." See e.g. Fed. R. Civ. P. 26(b)(2)(C)(iii).

In its motion, and during the teleconferences, applicant focused its arguments on its second set of document requests, and has not specifically argued that opposer's responses to any of applicant's first set of document requests are inadequate in any particular way (other than opposer's alleged failure to engage in appropriately extensive ESI discovery as a general matter).

Therefore, it is only necessary to focus on applicant's second set of document requests.

Second Set of Document Requests Nos. 1, 2, 6, 7 and 8

In these requests, applicant seeks "all" documents: (a) "assessing, evaluating or considering the market for pretzel crackers …;" (b) relating to opposer's "decisions to create, market and sell a pretzel cracker product;" (c) "assessing, evaluating or considering how to categorize, describe or define Rold Gold PRETZEL WAVES or Rold Gold Pretzel Chips for consumers, distributors or retailers;" (d) "reflecting any consumer views or comments about pretzel crackers;" and (e) "referring to Applicant or its PRETZEL CRISPS products" or other third party products in the same category. In response, opposer objected to these requests as, *inter alia*, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome, in that the "burden and expense" of producing "all" responsive documents "clearly outweighs any relevance and likely benefit, taking into account the needs of the case, the parties' resources, and the importance of the proposed discovery …." Nevertheless, in its supplemental responses, opposer indicated that it will produce "responsive, non-privileged documents" relating to "any consumer views or comments about 'pretzel crisps,'" and "the product descriptions for

16

Opposer's ROLD GOLD PRETZEL WAVES," which competed with applicant's PRETZEL CRISPS.

This is inadequate.  In fact, while opposer established that all of the specific material applicant seeks through these requests is "not reasonably accessible because of undue burden or cost," Fed. R. Civ. P. 26(b)(2)(B), applicant has established that some of the requested documents should nevertheless be produced before applicant begins taking depositions or serving other discovery, for the sake of efficiency.  Indeed, having the documents in advance of  depositions will likely assist applicant's efforts to identify, and logically schedule depositions of, appropriate witnesses, and will likely maximize the effectiveness of the depositions when taken.  See Fed. R. Civ. P. 26(b)(2)(C)(i) and (ii); TBMP § 402.02 (3d ed. 2011).  Furthermore, given opposer's concession that "industry usage and meaning" of PRETZEL CRISPS is "relevant" to the issues in this proceeding, the importance of at least some of the information applicant seeks through these requests outweighs the burden and expense of producing the information.  See Fed. R. Civ. P. 26(b)(2)(B)(iii); TBMP § 402.02 (3d ed. 2011).

Accordingly, applicant's motion is hereby **GRANTED IN PART** with respect to these requests, to the extent that opposer is hereby ordered to also produce, within **THIRTY**

**DAYS** of the mailing date of this order, representative samples of documents in opposer's possession, custody or control: (1) assessing, evaluating or considering any methods of describing the "product category" for "pretzel crackers," whether the pretzel crackers are or could be offered by opposer, applicant or a third party;[10] (2) relating to opposer's decision to offer a pretzel cracker product, <u>but only to the extent that</u> such documents refer to: (a) the "product category" for PRETZEL WAVES or Rold Gold Pretzel Chips; or (b) any marks which opposer used, uses or has considered using which contain the word CRISPS; (3) assessing, evaluating or considering how to categorize, describe or define PRETZEL WAVES or Pretzel Chips;[11] and (4) "reflecting any consumer views or comments about pretzel crackers."  TBMP § 414(2) (3d ed. 2011)("where complete compliance with a particular request for discovery would be unduly burdensome … responding party [may] comply by providing a representative sampling of the information

---

[10]     In other words, opposer must produce representative samples of documents concerning what it calls "product descriptors" or "generic descriptors" and/or which support opposer's response to applicant's Second Set of Interrogatories No. 3 ("In the case of PRETZEL WAVES, PRETZEL SNACKS was determined to be the statement of identity.  In the case of PRETZEL CHIPS, since PRETZEL CHIPS is descriptive, no other statement of identity was necessary.").
[11]     As applicant pointed out during the teleconferences, because opposer participated in the relevant market with its PRETZEL WAVES product, it would be very surprising if opposer did not discuss this market with, for example, distributors, retailers or marketers.

18

sought").[12]  In the event opposer fails to comply with the requirements of this order, opposer may be subject to sanctions, potentially including entry of judgment against it.  Trademark Rule 2.120(g); Fed. R. Civ. P. 37(b)(2). Furthermore, applicant may seek to preclude opposer from relying at trial on information or documents which should have been produced in response to any of applicant's discovery requests, but were not.  See, Panda Travel, Inc. v. Resort Option Enterprises, Inc., 94 USPQ2d 1789, 1792, (TTAB 2009); Quality Candy Shoppes/Buddy Squirrel of Wisconsin Inc. v. Grande Foods, 90 USPQ2d 1389, 1392 (TTAB 2007); Presto Products v. Nice-Pak Products, 9 USPQ2d 1895, 1896 n. 5 (TTAB 1988); TBMP § 527.01(e)(3d ed.  2011). Applicant's motion is otherwise denied with respect to these requests.  In preparing its supplemental responses required herein, opposer must produce responsive ESI, as necessary and appropriate, notwithstanding the finding that opposer's ESI discovery efforts were adequate under the circumstances of this case as a general matter.

---

[12]    Opposer produced a document summarizing consumer comments about "pretzel crackers," but did not produce the original comments themselves.  In its response to applicant's motion, opposer "offered to endeavor to ascertain whether it is technologically feasible to make the responsive comments available to Applicant in their original database format …." This is appropriate, and opposer should produce the comments in their original format unless doing so would be unduly burdensome or expensive.

In addition, opposer must take care to ensure that it works with, and searches for documents maintained by, the appropriate employees and/or custodians. As discussed during the teleconferences, in response to applicant's Second Set of Interrogatories, opposer provided a list of its employees "responsible for the creation, branding, advertising, marketing or selling" of PRETZEL WAVES and Rold Gold Pretzel Chips," and an entirely different list of employees "who searched their documents"  in response to applicant's discovery requests. <u>Compare</u> Response to Second Set of Interrogatories No. 1 <u>with</u> Response to Second Set of Interrogatories No. 5 (Mellon Dec. Ex. P). Opposer did not have a satisfactory explanation for why there is no overlap between these lists.

Second Set of Document Requests No. 4

Applicant requested "all documents" relating to opposer's "decision to name its Rold Gold pretzel cracker products PRETZEL WAVES and Pretzel Chips, including but not limited to any consideration of alternative names." Opposer objected on essentially the same grounds as it did with respect to applicant's other document requests, but agreed to produce documents "relating to the product names for Opposer's ROLD GOLD PRETZEL WAVES." This is sufficient and applicant's motion is otherwise **DENIED** with respect to this request. While information and documents concerning the

<u>category</u> for the parties' products is sufficiently relevant to overcome opposer's objections, and to require opposer to again search its documents including ESI, the choice of a <u>particular product name or mark</u> is not, unless that name or mark includes the word CRISPS.

Conclusion

Applicant's motion to compel is granted in part, to the extent that opposer is ordered, within **THIRTY DAYS** of the mailing date of this order, to produce representative samples of documents:

> (1)   assessing, evaluating or considering any methods of describing the "product category" for "pretzel crackers," whether the pretzel crackers are offered by opposer, applicant or a third party;
>
> (2)   relating to opposer's decision to offer a pretzel cracker product, <u>but only to the extent that</u> such documents refer to: (a) the "product category" for PRETZEL WAVES or Rold Gold Pretzel Chips; or (b) any marks which opposer used, uses or has considered using which contain the word CRISPS;
>
> (3)   assessing, evaluating or considering how to categorize, describe or define PRETZEL WAVES or Pretzel Chips; and
>
> (4)   "reflecting any consumer views or comments about pretzel crackers."

Opposition No. 91195552 and Cancellation No. 92053001

Applicant's motion is otherwise denied.  Proceedings herein are resumed.  Discovery, disclosure, trial and other dates are hereby reset as follows:

| | |
|---|---|
| Discovery Closes | **February 28, 2012** |
| Plaintiff's Pretrial Disclosures | **April 13, 2012** |
| Plaintiff's 30-day Trial Period Ends | **May 28, 2012** |
| Defendant's Pretrial Disclosures | **June 12, 2012** |
| Defendant's 30-day Trial Period Ends | **July 27, 2012** |
| Plaintiff's Rebuttal Disclosures | **August 11, 2012** |
| Plaintiff's 15-day Rebuttal Period Ends | **September 10, 2012** |

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony.  Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rule 2.128(a) and (b).  An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.

***

22